```
      IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

        MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


JANOKA, INC., d/b/a The      )
Medicine Shop,               )
                             )
      Plaintiff,             )
                             )      CIVIL ACTION NO.
      v.                     )      2:11cv790-MHT
                             )           (WO)
VEOLIA ES SOLID WASTE        )
SOUTHEAST, INC.,             )
                             )
      Defendant.             )
```

## OPINION

Plaintiff Janoka, Inc., d/b/a The Medicine Shop, began this class-action lawsuit in an Alabama state court, and defendant Veolia ES Solid Waste Southeast, Inc. removed it to this federal court based upon the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2), 1453, which, among other things, requires a removing party to demonstrate that the class members' claims exceed $ 5 million in the aggregate, exclusive of interest and costs. Arguing that Veolia has not demonstrated that the value of the class members' claims

will exceed this figure, Janoka has filed a motion to remand.

After a review of the evidence, this court is of the opinion, and so finds factually, that Veolia has not satisfied its burden.  Accordingly, the remand motion will be granted.

I.

Article III of the Constitution limits the jurisdiction of federal courts and thereby requires statutory authorization for a federal court to hear a case.  CAFA establishes such authorization, and provides a right for removal where a defendant can demonstrate (1) an amount in controversy that exceeds $ 5 million; (2) minimal diversity; (3) numerosity involving the monetary claims of 100 or more potential plaintiffs; and (4) the potential plaintiffs' claims involve common questions of law or fact.  28 U.S.C. § 1332(d)(2); see also Thomas v.

Bank of America Corp., 570 F.3d 1280, 1282 (11th Cir. 2009).

As mentioned, only the amount in controversy is at issue here, and Veolia, as the removing party, bears the burden of demonstrating that the $ 5 million threshold has been met.  See Lowery v. Alabama Power Co., 483 F.3d 1184, 1208 (11th Cir. 2007).  In addition, as a further recognition of the limited jurisdiction of federal courts, "removal statutes are construed narrowly. ... [W]here plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." Burns v. Windsor Inc. Co., 31 F.3d 1092, 1095 (11th Cir. 1996).

The Eleventh Circuit Court of Appeals has employed two different burdens of proof for addressing amount-in-controversy disputes.  Where the plaintiff's complaint expressly requests an amount in damages that falls below the jurisdictional amount, the removing defendant must prove to a "legal certainty that plaintiff's claim ... exceed[s]" the applicable amount-in-controversy

3

requirement. Burns, 31 F.3d at 1095; see also Tapscott v. MA Dealer Service Corp., 77 F.3d 1353, 1357 (11th Cir. 1996), overruled on other grounds by Cohen v. Office Depot, Inc., 204 F.3d 1069, 1072 (11th Cir. 2000). And, by legal certainty, the Burns court meant that, "if plaintiff prevails on liability, an award below the jurisdictional amount would be outside the range of permissible awards." 31 F.3d at 1096.

Burns distinguished cases where the plaintiff has affirmatively and expressly limited damages to an amount below the jurisdictional requirement from cases where "the amount of damages sought by plaintiff [i]s unspecified." Id. at 1096 n.6; see also Tapscott, 77 F.3d at 1356-57 (discussing Burns's distinction between cases where "a plaintiff has specifically claimed less than the jurisdictional amount" and those regarding an "unspecified claim for damages"). In the latter cases, it is well-settled that the removing party bears the burden of establishing the jurisdictional amount by a

4

preponderance of the evidence rather than by a legal certainty. Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 752 (11th Cir. 2010); Lowery, 483 F.3d at 1208.

As Burns explained, and other courts have further elaborated, the difference in treatment between complaints with specified- and unspecified-damage claims derives from the understanding that the "plaintiff is still the master of his own claim" and thus that the defendant's "right to remove" and the "plaintiff's right to choose his forum are not on equal footing," 31 F.3d at 1095; see also Tapscott, 77 F.3d at 1353 ("The rationale is that although a defendant has a right to remove in certain cases, a plaintiff is still master of her own claim.").

Thus, the general rule of strict construction of removal statutes, along with the understanding that the plaintiff is the master of its claim, has led to the following burden-of-proof distinction between unspecified and specified damages: Where the damages in the

5

plaintiff's complaint are unspecified, the removing defendant's burden of proof for the jurisdictional amount is preponderance of the evidence; and, where the damages in the plaintiff's complaint are specified and are below the jurisdictional amount, the removing defendant's burden of proof for the jurisdictional amount is legal certainty.

Here, the complaint specifically limits the amount of damages that can be recovered for Janoka and each potential class member:

> "Plaintiff, individually and on behalf of the putative class, does not seek more than $ 4,998,000.00 in total damages. The total damages for the entire class would not exceed $ 4,998,000.00, in the aggregate, for all relief requested herein."

Complaint (Doc. No. 1-3, at 8). Like the complaint considered in Burns, this amount is just below the jurisdictional requirement, and thus, under Burns, Veolia bears the burden of proving to a legal certainty that the amount in controversy will exceed $ 5 million.

6

Despite the fact that Janoka in its complaint has expressly asked for less than the jurisdictional amount, Veolia asks this court to apply the lower preponderance-of-evidence standard. Veolia argues that Congress passed CAFA for the purpose of making it easier for defendants to remove cases to federal court.

Admittedly, the Eleventh Circuit has not confronted precisely the issue of what the CAFA burden of proof for removal is where the damages in the plaintiff's complaint are specified and below the jurisdictional amount; nevertheless, it has offered compelling guidance as to how to resolve the issue. In rejecting the contentions that CAFA changed the traditional removal principles that govern the placement of the burden of proof and the resolution of doubts in favor of remand, the appellate court wrote that, "While the text of CAFA plainly expands federal jurisdiction over class actions and facilitates their removal, '[w]e presume that Congress legislates against the backdrop of established principles of state

7

and federal common law, and that when it wishes to deviate from deeply rooted principles, it will say so.'" Miedema v. Maytag Corp., 450 F.3d 1322, 1329 (11th Cir. 2006) (quoting United States v. Baxter Int'l, Inc., 345 F.3d 866, 900 (11th Cir. 2003)). Thus, according to the court, "generalized appeals to CAFA's 'overriding purpose' are unavailing in the face of CAFA's silence on the traditional, well-established rules." Id.

Here, CAFA is silent on the issue of the level of burden of proof. There is absolutely nothing in the statute to indicate, or even to suggest remotely, that Congress intended to address how the federal courts of appeals were resolving (rightly or wrongly) this issue. In the face of this congressional silence and based on the teaching of Miedema, this court holds that the following well-established Eleventh Circuit principle still obtains under CAFA: Where the damages in the plaintiff's complaint are specified and are below the jurisdictional amount, the removing defendant's burden of

proof for the jurisdictional amount is legal certainty. See Lowdermilk v. U.S. Bank National Ass'n, 479 F.3d 994, 998-1000 (9th Cir. 2007) (holding that, where the damages in the plaintiff's complaint are specified, the removing defendant's burden of proof for the jurisdictional amount under CAFA is legal certainty); Morgan v. Gay, 471 F.3d 469, 474-75 (3rd Cir. 2006) (same).

Moreover, with this reading of CAFA, this court preserves in CAFA cases the general rule of strict construction of removal statutes and the understanding that the plaintiff is the master of its claim, the two longstanding principles that led to the burden-of-proof distinction between specified and unspecified damages in non-CAFA cases.  See Lowdermilk, 479 F.3d at 1000 ("By adopting 'legal certainty' as the standard of proof, we guard the presumption against federal jurisdiction and preserve the plaintiff's prerogative, subject to the good faith requirement, to forgo a potentially larger recovery to remain in state court."); Morgan, 471 F.3d at 474 (in

9

adopting the legal-certainty standard, the court observed that "CAFA does not change the proposition that the plaintiff is the master of her own claim").

Also, with this reading of CAFA, this court maintains, as much as possible, for ease of application and understanding, a reasonable parallelism or symmetry between CAFA and non-CAFA cases.  Or, to put it another way from a more practical perspective, the court sees no need, absent an appellate or statutory directive, to make removal law more complex than it already is.

This reading of CAFA is also consistent with, if not reinforced by, Eleventh Circuit CAFA cases that, in finding that the preponderance-of-evidence standard applies, have expressly and carefully limited their language to those instances where the damages in the plaintiff's complaint were unspecified.  For example, in the CAFA case <u>Lowery v. Alabama Power Co.</u>, the appellate court wrote: "Because CAFA does not disturb the long-established rule that a removing defendant bears the

10

burden of proving federal jurisdiction, upon the plaintiffs' motion to remand in this case, the defendants bear the burden of establishing the jurisdictional requirements for a CAFA mass action. Furthermore, because this case involves a complaint for unspecified damages, the defendants must establish jurisdiction by a preponderance of the evidence." 438 F3d. At 1211.  And, in another CAFA case, <u>Pretka v. Kolter City Plaza II, Inc.</u>, the appellate court reaffirmed these governing principles: "'CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction.'" 608 F.3d at 752 (quoting <u>Evans v. Walter Indus., Inc.</u>, 449 F.3d 1159, 1164 (11th Cir. 2006)). And "'[w]here, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement.'" <u>Id</u>.

(quoting Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001)).

Veolia's reliance on Bell v. Hershey Co., 557 F.3d 953 (8th Cir. 2009), is misplaced.  The Eighth Circuit Court of Appeals wrote that a "party seeking to remove in the non CAFA context ... has the burden to prove the requisite amount by a preponderance of the evidence ... regardless of whether the complaint alleges no specific amount of damages or an amount under the jurisdictional minimum."  557 F.3d at 956 (quoting Advance Am. Servicing of Ark., Inc. v. McGinnis, 526 F.3d 1179, 1173 (8th Cir. 2008), and In re Minn. Mut. Life Ins. Co. Sales Practices Litig., 346 F.3d 830, 834 (8th Cir. 2003) (internal quotation marks omitted)).  Given this pre-CAFA rule, the appellate court then reasoned that, imposing a legal-certainty test for CAFA cases would "force [it] to depart from [its] non CAFA precedent where [it had] only required a removing party to establish jurisdictional facts by a preponderance of the evidence."  Id. at 957.

12

Indeed, the Eighth Circuit's approach is fully consistent with this court's. As the Eighth Circuit did not alter its general non-CAFA standard of proof in addressing CAFA cases, this court has not departed as well.

II.

In some ways, the foregoing could be viewed as much ado about nothing, for, regardless as to the applicable standard (preponderance of evidence or legal certainty), the court is convinced, and so finds factually, that Veolia has not met the removal burden.

Janoka's complaint includes only one cause of action against Veolia: breach of contract. The complaint alleges that Janoka and other putative class members entered into written service agreements with Veolia for the provision of solid waste services. The contracts set forth a "service rate" and indicate that they will be automatically renewed after three years unless the customer opts-out. The contracts also provide that

13

Veolia may increase the service rate, but they limit annual increases to "adjust the rates to reflect the percentage increase in the U.S. City Average Consumer Price Index For All Urban Consumers (CPI-U), published by the U.S. Department of Labor Statistics."  Complaint (Doc. No. 1-3, at 6).  Janoka's claim is specific: Veolia "has breached the agreements by increasing the service rates by more than CPI-U."  Id. at 6-7.  The complaint also points out that the CPI-U is meant to include increases in fuel prices, but notes that Veolia has a separate "fuel surcharge" that it charged Janoka and putative class members.  This additional fee, Janoka alleges, makes Veolia's "arbitrary and inflated rate increases ... even greater than what is allowed by contract."  Id. at 7.  In short, the complaint alleges that (1) a written agreement exists between Janoka and Veolia and (2) Veolia's improper practices constitute a breach of contract by causing Janoka "and putative class members to pay more for services than agreed."  Id. at 7.

Veolia's argument that the amount in controversy exceeds $ 5 million comes in two parts.  First, Veolia argues that the complaint is not a breach-of-contract action for just "service rate" increases but actually "put[s] at issue ... the entirety of rate increases assessed and collected during the putative class period." Veolia Resp. (Doc. No. 12, at 2) (emphasis added).  The complaint does not support this reading, however.  Read naturally, the complaint alleges that Veolia increased the service rate above the permissible CPI-U amount, not that all raises were unfair or that every rate increase was in violation of the contract.  For example, Janoka alleges that the annual CPI-U change for 2008 was 3.8 %, but that Veolia increased the service rate by 8.5 %, which means that Veolia should be liable for the 4.7 % increase above the CPI-U amount.

The reference to the fuel surcharge is an argument about double-counting: Janoka alleges that the impermissible rate-hikes are even more troubling if they

15

were based upon fuel prices because the increased price of fuel is covered by the CPI-U figure.  In essence, by charging a fuel surcharge and by failing to take that out of the service-rate increases, Janoka alleges, it has been twice taxed for a singular increase in the price of fuel.  Keeping in mind the rule that Janoka is the master of its complaint, the court will not stretch the language of the complaint in such a manner as to include all rate increases when Janoka has not defined its claim in such a manner.  The court, therefore, agrees with Janoka's reasonable reading of its own complaint that "the measure of damages sought ... is the amount of the increase <u>above and beyond the CPI-U percentege</u> and <u>not the total service charge increase</u>."  Janoka Mo. (Doc. No. 8, at 6) (emphasis in original).

Veolia's second argument, which relies on the first, is no more convincing.  In a declaration, the Chief Financial Officer of Veolia, "determined that Veolia's Alabama customers received total base service rate

increases in the approximate amount of $5,541,231" for the time period covered in the complaint. Declaration (Doc. No. 1-2, at 2). Though this amount "does not include base service rate increases for Alabama customers invoiced from Veolia's Columbus, Georgia, billing agreement," which supports Veolia's contention, the declaration further admits that this figure does not apply solely to putative class members. Instead, the "total base service price increase amount ($5,541,231) does not differentiate between customers, and would include, for instance, customers covered by contracts that may contain different terms than alleged in the Complaint." Id.

By its terms, therefore, Veolia's "base service rate" amount is too high because it does not separate out the rate increases above the CPI-U amount, which is the basis for the breach-of-contract claim. The amount is also too high because it does not exclude non-class members; the putative class is limited to those with municipal-

17

franchise agreements and does not include Alabama customers with residential subscriptions instead of written contracts.  Based upon these deficiencies, the court finds, factually, that Veolia has not demonstrated by a preponderance of the evidence or to a legal certainty (that is, "if [Janoka] prevails on liability, an award below the jurisdictional amount would be outside the range of permissible awards." Burns, 31 F.3d at 1096) that the amount in controversy meets the jurisdictional amount.

In addition, the fact that Veolia has failed to report some service rate increases from those who could be putative class members (those who are invoiced in Columbus, Georgia), but then attempts to sweep in the rate increases from those Veolia admits are not putative class members (those with residential subscriptions), does little to help its contention.  Instead, this inadequacy of evidence only increases the uncertainty as to the amount of damages and thus reinforces the court's

18

conclusion that Veolia has not proven by a preponderance of the evidence or to a legal certainty that the amount in controversy exceeds $5 million.

An appropriate order will be entered.

DONE, this the 9th day of May, 2012.

                     <u>    /s/ Myron H. Thompson    </u>
                     UNITED STATES DISTRICT JUDG