IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| JANOKA, INC., d/b/a The<br>Medicine Shop, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:11cv790-MHT |
| | ) | (WO) |
| VEOLIA ES SOLID WASTE | ) | |
| SOUTHEAST, INC., | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

Plaintiff Janoka, Inc., d/b/a The Medicine Shop,
began this class-action lawsuit in an Alabama state
court, and defendant Veolia ES Solid Waste Southeast,
Inc. removed it to this federal court based upon the
Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C.
§§ 1332(d)(2), 1453, which, among other things, requires
a removing party to demonstrate that the class members'
claims exceed $ 5 million in the aggregate, exclusive of
interest and costs.    Arguing that Veolia has not
demonstrated that the value of the class members' claims

will exceed this figure, Janoka has filed a motion to remand.

After a review of the evidence, this court is of the opinion, and so finds factually, that Veolia has not satisfied its burden.  Accordingly, the remand motion will be granted.

## I.

Article III of the Constitution limits the jurisdiction of federal courts and thereby requires statutory authorization for a federal court to hear a case.  CAFA establishes such authorization, and provides a right for removal where a defendant can demonstrate (1) an amount in controversy that exceeds $ 5 million; (2) minimal diversity; (3) numerosity involving the monetary claims of 100 or more potential plaintiffs; and (4) the potential plaintiffs' claims involve common questions of law or fact.  28 U.S.C. § 1332(d)(2); see also Thomas v.

<u>Bank of America Corp</u>., 570 F.3d 1280, 1282 (11th Cir. 2009).

As mentioned, only the amount in controversy is at issue here, and Veolia, as the removing party, bears the burden of demonstrating that the $ 5 million threshold has been met. <u>See</u> <u>Lowery v. Alabama Power Co.</u>, 483 F.3d 1184, 1208 (11th Cir. 2007). In addition, as a further recognition of the limited jurisdiction of federal courts, "removal statutes are construed narrowly. ... [W]here plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." <u>Burns v. Windsor Inc. Co.</u>, 31 F.3d 1092, 1095 (11th Cir. 1996).

The Eleventh Circuit Court of Appeals has employed two different burdens of proof for addressing amount-in-controversy disputes. Where the plaintiff's complaint expressly requests an amount in damages that falls below the jurisdictional amount, the removing defendant must prove to a "legal certainty that plaintiff's claim ... exceed[s]" the applicable amount-in-controversy

3

requirement.  <u>Burns</u>, 31 F.3d at 1095; <u>see also</u> <u>Tapscott</u>
<u>v. MA Dealer Service Corp</u>., 77 F.3d 1353, 1357 (11th Cir.
1996), <u>overruled on other grounds by Cohen v. Office</u>
<u>Depot, Inc.</u>, 204 F.3d 1069, 1072 (11th Cir. 2000).  And,
by legal certainty, the <u>Burns</u> court meant that, "if
plaintiff prevails on liability, an award below the
jurisdictional amount would be outside the range of
permissible awards."  31 F.3d at 1096.

  <u>Burns</u> distinguished cases where the plaintiff has
affirmatively and expressly limited damages to an amount
below the jurisdictional requirement from cases where
"the amount of damages sought by plaintiff [i]s
unspecified."  <u>Id</u>. at 1096 n.6; <u>see also</u> <u>Tapscott</u>, 77
F.3d at 1356-57 (discussing <u>Burns</u>'s distinction between
cases where "a plaintiff has specifically claimed less
than the jurisdictional amount" and those regarding an
"unspecified claim for damages").  In the latter cases,
it is well-settled that the removing party bears the
burden of establishing the jurisdictional amount by a

4

preponderance of the evidence rather than by a legal certainty.   <u>Pretka v. Kolter City Plaza II, Inc.</u>, 608 F.3d 744, 752 (11th Cir. 2010); <u>Lowery</u>, 483 F.3d at 1208.

As <u>Burns</u> explained, and other courts have further elaborated, the difference in treatment between complaints with specified- and unspecified-damage claims derives from the understanding that the "plaintiff is still the master of his own claim" and thus that the defendant's "right to remove" and the "plaintiff's right to choose his forum are not on equal footing," 31 F.3d at 1095; <u>see also</u> <u>Tapscott</u>, 77 F.3d at 1353 ("The rationale is that although a defendant has a right to remove in certain cases, a plaintiff is still master of her own claim.").

Thus, the general rule of strict construction of removal statutes, along with the understanding that the plaintiff is the master of its claim, has led to the following burden-of-proof distinction between unspecified and specified damages: Where the damages in the

5

plaintiff's complaint are unspecified, the removing defendant's burden of proof for the jurisdictional amount is preponderance of the evidence; and, where the damages in the plaintiff's complaint are specified and are below the jurisdictional amount, the removing defendant's burden of proof for the jurisdictional amount is legal certainty.

Here, the complaint specifically limits the amount of damages that can be recovered for Janoka and each potential class member:

> "Plaintiff, individually and on behalf of the putative class, does not seek more than $ 4,998,000.00 in total damages.  The total damages for the entire class would not exceed $ 4,998,000.00, in the aggregate, for all relief requested herein."

Complaint (Doc. No. 1-3, at 8).  Like the complaint considered in Burns, this amount is just below the jurisdictional requirement, and thus, under Burns, Veolia bears the burden of proving to a legal certainty that the amount in controversy will exceed $ 5 million.

6

Despite the fact that Janoka in its complaint has expressly asked for less than the jurisdictional amount, Veolia asks this court to apply the lower preponderance-of-evidence standard.  Veolia argues that Congress passed CAFA for the purpose of making it easier for defendants to remove cases to federal court.

Admittedly, the Eleventh Circuit has not confronted precisely the issue of what the CAFA burden of proof for removal is where the damages in the plaintiff's complaint are specified and below the jurisdictional amount; nevertheless, it has offered compelling guidance as to how to resolve the issue.  In rejecting the contentions that CAFA changed the traditional removal principles that govern the placement of the burden of proof and the resolution of doubts in favor of remand, the appellate court wrote that, "While the text of CAFA plainly expands federal jurisdiction over class actions and facilitates their removal, '[w]e presume that Congress legislates against the backdrop of established principles of state

7

and federal common law, and that when it wishes to deviate from deeply rooted principles, it will say so.'" Miedema v. Maytag Corp., 450 F.3d 1322, 1329 (11th Cir. 2006) (quoting United States v. Baxter Int'l, Inc., 345 F.3d 866, 900 (11th Cir. 2003)).  Thus, according to the court, "generalized appeals to CAFA's 'overriding purpose' are unavailing in the face of CAFA's silence on the traditional, well-established rules." Id.

Here, CAFA is silent on the issue of the level of burden of proof.  There is absolutely nothing in the statute to indicate, or even to suggest remotely, that Congress intended to address how the federal courts of appeals were resolving (rightly or wrongly) this issue. In the face of this congressional silence and based on the teaching of Miedema, this court holds that the following well-established Eleventh Circuit principle still obtains under CAFA:  Where the damages in the plaintiff's complaint are specified and are below the jurisdictional amount, the removing defendant's burden of

8

proof for the jurisdictional amount is legal certainty.
See <u>Lowdermilk v. U.S. Bank National Ass'n</u>, 479 F.3d 994,
998-1000 (9th Cir. 2007) (holding that, where the damages
in the plaintiff's complaint are specified, the removing
defendant's burden of proof for the jurisdictional amount
under CAFA is legal certainty); <u>Morgan v. Gay</u>, 471 F.3d
469, 474-75 (3rd Cir. 2006) (same).

Moreover, with this reading of CAFA, this court
preserves in CAFA cases the general rule of strict
construction of removal statutes and the understanding
that the plaintiff is the master of its claim, the two
longstanding principles that led to the burden-of-proof
distinction between specified and unspecified damages in
non-CAFA cases.  See <u>Lowdermilk</u>, 479 F.3d at 1000 ("By
adopting 'legal certainty' as the standard of proof, we
guard the presumption against federal jurisdiction and
preserve the plaintiff's prerogative, subject to the good
faith requirement, to forgo a potentially larger recovery
to remain in state court."); <u>Morgan</u>, 471 F.3d at 474 (in

adopting the legal-certainty standard, the court observed that "CAFA does not change the proposition that the plaintiff is the master of her own claim").

Also, with this reading of CAFA, this court maintains, as much as possible, for ease of application and understanding, a reasonable parallelism or symmetry between CAFA and non-CAFA cases.  Or, to put it another way from a more practical perspective, the court sees no need, absent an appellate or statutory directive, to make removal law more complex than it already is.

This reading of CAFA is also consistent with, if not reinforced by, Eleventh Circuit CAFA cases that, in finding that the preponderance-of-evidence standard applies, have expressly and carefully limited their language to those instances where the damages in the plaintiff's complaint were unspecified.  For example, in the CAFA case Lowery v. Alabama Power Co., the appellate court wrote: "Because CAFA does not disturb the long-established rule that a removing defendant bears the

burden of proving federal jurisdiction, upon the plaintiffs' motion to remand in this case, the defendants bear the burden of establishing the jurisdictional requirements for a CAFA mass action. Furthermore, because this case involves a complaint for unspecified damages, the defendants must establish jurisdiction by a preponderance of the evidence." 438 F3d. At 1211. And, in another CAFA case, <u>Pretka v. Kolter City Plaza II, Inc.</u>, the appellate court reaffirmed these governing principles: "'CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction.'" 608 F.3d at 752 (quoting <u>Evans v. Walter Indus., Inc.</u>, 449 F.3d 1159, 1164 (11th Cir. 2006)). And "'[w]here, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement.'" <u>Id</u>.

(quoting <u>Williams v. Best Buy Co., Inc.</u>, 269 F.3d 1316, 1319 (11th Cir. 2001)).

Veolia's reliance on <u>Bell v. Hershey Co.</u>, 557 F.3d 953 (8th Cir. 2009), is misplaced.  The Eighth Circuit Court of Appeals wrote that a "party seeking to remove in the non CAFA context ... has the burden to prove the requisite amount by a preponderance of the evidence ... regardless of whether the complaint alleges no specific amount of damages or an amount under the jurisdictional minimum."  557 F.3d at 956 (quoting <u>Advance Am. Servicing of Ark., Inc. v. McGinnis</u>, 526 F.3d 1179, 1173 (8th Cir. 2008), and <u>In re Minn. Mut. Life Ins. Co. Sales Practices Litig.</u>, 346 F.3d 830, 834 (8th Cir. 2003) (internal quotation marks omitted)).  Given this pre-CAFA rule, the appellate court then reasoned that, imposing a legal-certainty test for CAFA cases would "force [it] to depart from [its] non CAFA precedent where [it had] only required a removing party to establish jurisdictional facts by a preponderance of the evidence."  <u>Id</u>. at 957.

Indeed, the Eighth Circuit's approach is fully consistent with this court's.  As the Eighth Circuit did not alter its general non-CAFA standard of proof in addressing CAFA cases, this court has not departed as well.


## II.

In some ways, the foregoing could be viewed as much ado about nothing, for, regardless as to the applicable standard (preponderance of evidence or legal certainty), the court is convinced, and so finds factually, that Veolia has not met the removal burden.

Janoka's complaint includes only one cause of action against Veolia: breach of contract.  The complaint alleges that Janoka and other putative class members entered into written service agreements with Veolia for the provision of solid waste services.  The contracts set forth a "service rate" and indicate that they will be automatically renewed after three years unless the customer opts-out.  The contracts also provide that

13

Veolia may increase the service rate, but they limit annual increases to "adjust the rates to reflect the percentage increase in the U.S. City Average Consumer Price Index For All Urban Consumers (CPI-U), published by the U.S. Department of Labor Statistics." Complaint (Doc. No. 1-3, at 6). Janoka's claim is specific: Veolia "has breached the agreements by increasing the service rates by more than CPI-U." Id. at 6-7. The complaint also points out that the CPI-U is meant to include increases in fuel prices, but notes that Veolia has a separate "fuel surcharge" that it charged Janoka and putative class members. This additional fee, Janoka alleges, makes Veolia's "arbitrary and inflated rate increases ... even greater than what is allowed by contract." Id. at 7. In short, the complaint alleges that (1) a written agreement exists between Janoka and Veolia and (2) Veolia's improper practices constitute a breach of contract by causing Janoka "and putative class members to pay more for services than agreed." Id. at 7.

Veolia's argument that the amount in controversy exceeds $ 5 million comes in two parts.  First, Veolia argues that the complaint is not a breach-of-contract action for just "service rate" increases but actually "put[s] at issue ... the entirety of rate increases assessed and collected during the putative class period." Veolia Resp. (Doc. No. 12, at 2) (emphasis added).  The complaint does not support this reading, however.  Read naturally, the complaint alleges that Veolia increased the service rate above the permissible CPI-U amount, not that all raises were unfair or that every rate increase was in violation of the contract.  For example, Janoka alleges that the annual CPI-U change for 2008 was 3.8 %, but that Veolia increased the service rate by 8.5 %, which means that Veolia should be liable for the 4.7 % increase above the CPI-U amount.

The reference to the fuel surcharge is an argument about double-counting: Janoka alleges that the impermissible rate-hikes are even more troubling if they

were based upon fuel prices because the increased price
of fuel is covered by the CPI-U figure.  In essence, by
charging a fuel surcharge and by failing to take that out
of the service-rate increases, Janoka alleges, it has
been twice taxed for a singular increase in the price of
fuel.  Keeping in mind the rule that Janoka is the master
of its complaint, the court will not stretch the language
of the complaint in such a manner as to include all rate
increases when Janoka has not defined its claim in such
a manner.  The court, therefore, agrees with Janoka's
reasonable reading of its own complaint that "the measure
of damages sought ... is the amount of the increase <u>above
and beyond the CPI-U percentege</u> and <u>not the total service
charge increase</u>."  Janoka Mo. (Doc. No. 8, at 6)
(emphasis in original).

Veolia's second argument, which relies on the first,
is no more convincing.  In a declaration, the Chief
Financial Officer of Veolia, "determined that Veolia's
Alabama customers received total base service rate

increases in the approximate amount of $5,541,231" for
the time period covered in the complaint. Declaration
(Doc. No. 1-2, at 2). Though this amount "does not
include base service rate increases for Alabama customers
invoiced from Veolia's Columbus, Georgia, billing
agreement," which supports Veolia's contention, the
declaration further admits that this figure does not
apply solely to putative class members. Instead, the
"total base service price increase amount ($5,541,231)
does not differentiate between customers, and would
include, for instance, customers covered by contracts
that may contain different terms than alleged in the
Complaint." Id.

By its terms, therefore, Veolia's "base service rate"
amount is too high because it does not separate out the
rate increases above the CPI-U amount, which is the basis
for the breach-of-contract claim. The amount is also too
high because it does not exclude non-class members; the
putative class is limited to those with municipal-

**17**

franchise agreements and does not include Alabama
customers with residential subscriptions instead of
written contracts. Based upon these deficiencies, the
court finds, factually, that Veolia has not demonstrated
by a preponderance of the evidence or to a legal
certainty (that is, "if [Janoka] prevails on liability,
an award below the jurisdictional amount would be outside
the range of permissible awards." Burns, 31 F.3d at 1096)
that the amount in controversy meets the jurisdictional
amount.

In addition, the fact that Veolia has failed to
report some service rate increases from those who could
be putative class members (those who are invoiced in
Columbus, Georgia), but then attempts to sweep in the
rate increases from those Veolia admits are not putative
class members (those with residential subscriptions),
does little to help its contention. Instead, this
inadequacy of evidence only increases the uncertainty as
to the amount of damages and thus reinforces the court's

conclusion that Veolia has not proven by a preponderance of the evidence or to a legal certainty that the amount in controversy exceeds $5 million.

An appropriate order will be entered.

DONE, this the 9th day of May, 2012.


                                    /s/ Myron H. Thompson
                              UNITED STATES DISTRICT JUDG